UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RAY GORDON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NNENNA IKEGBU,<br><br>　　　　Defendant. | Case No. 2:21-cv-01898-DAD-JDP (PC)<br><br>**ORDER**<br><br>GRANTING PLAINTIFF'S MOTION TO FILE SUR-REPLY<br><br>ECF No. 39<br><br>**FINDINGS AND RECOMMENDATIONS**<br><br>THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>ECF No. 29<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

　　　　Plaintiff brings this case against defendant Ikegbu and alleges that she violated his rights by rejecting his primary care provider's recommendation that he receive a cortisone injection for his shoulder. ECF No. 1 at 7. Now, defendant has moved for summary judgment, ECF No. 29. Plaintiff has filed an opposition, ECF No. 37, and a sur-reply (along with a motion to permit that additional reply), ECF Nos. 39 & 40. I will grant plaintiff's motion and consider his sur-reply. I also recommend, however, that defendant's motion for summary judgment be granted.

Motion for Summary Judgment

A. Legal Standards

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

1   essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*
2   *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this
3   initial burden, the burden then shifts to the non-moving party "to designate specific facts
4   demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d
5   376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than
6   the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477
7   U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material
8   issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
9   require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*
10  *Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).
11          The court must apply standards consistent with Rule 56 to determine whether the moving
12  party has demonstrated there to be no genuine issue of material fact and that judgment is
13  appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
14  "[A] court ruling on a motion for summary judgment may not engage in credibility
15  determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
16  2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the
17  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
18  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,
19  198 F.3d 1130, 1134 (9th Cir. 2000).
20          B.     Background
21          Plaintiff alleges that his primary care provider recommended a cortisone shot for his
22  shoulder pain in July 2020.  ECF No. 1 at 7.  Defendant Ikegbu was the Chief Physician at the
23  California Medical Facility, and the cortisone shot required her approval.  *Id.*  Ikegbu denied the
24  injection on August 26, 2020.  *Id.*  Months passed, and, after an MRI on his injured shoulder
25  revealed a torn rotator cuff, plaintiff ultimately underwent surgery in May 2021.  *Id.* at 8.
26          In her motion for summary judgment, defendant Ikegbu argues that her denial of the
27  cortisone injection was premised on a March 20, 2020 directive from the California Department
28  of Corrections and Rehabilitation's medical supervisors that, in light of the emerging Covid-19

1 pandemic, all "elective procedures/surgeries" were to be postponed until further notice. ECF No.
2 29 at 7; ECF No. 29-2 at 32.

    C.  Analysis

Defendant argues that she did not violate plaintiff's Eighth Amendment rights because her decision to deny the cortisone shot was premised on an overarching CDCR directive, and, thus, she lacked the requisite culpable state of mind to support a medical deliberate indifference claim. ECF No. 29 at 12. She also contends that, because plaintiff's underlying shoulder pain was ultimately determined to stem from a torn rotator cuff, her denial of the cortisone shot did not harm him, because such an injection is not an appropriate treatment for that condition. *Id.* at 14-15. Finally, defendant Ikegbu argues that she is entitled to qualified immunity because a reasonable official would not, faced with the CDCR directive that elective procedures be postponed, have known that adherence to the same would violate the Eighth Amendment. *Id.* at 16. I find the first and third arguments persuasive and recommend that summary judgment be granted thereon.

    i.  Deliberate Indifference

A successful deliberate indifference claim requires a showing that: (1) the claimant had a serious medical need; and (2) that the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In this context, deliberate indifference is more than negligence or medical malpractice; the required state of mind is one of subjective recklessness. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). I agree with defendant Ikegbu that, in the face of the overarching CDCR directive that elective procedures be postponed, plaintiff cannot prove the second element.

It bears remembering that, in 2020, the pandemic and its attendant uncertainties were near their peak. The blasé attitude with which much of our society now treats the virus, whether warranted or not, was inconceivable at the time. Much was unknown as to the virus's transmissibility, treatability, and the likelihood of long-term or fatal effects for those stricken. As such, it cannot be reasonably argued that it was deliberate indifference for prison administrators

to take steps to limit the likelihood that prisoners would contract it.[1]  And, if that is true, then it must follow that an official on a lower supervisory rung, like the defendant, cannot be deliberately indifferent in implementing the medical directive her superiors crafted.  The matter might be different if the procedure at issue were not elective, but it was and they were not.  None of this analysis is intended to minimize the suffering plaintiff endured.  Rather, it emphasizes the high standard that must be met to establish a violation of a claimant's constitutional rights.

          ii.        Qualified Immunity

I also find defendant's argument that she is entitled to qualified immunity persuasive.  To determine whether the defense of qualified immunity is applicable, a court must ask "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).  As noted above, I have already found that defendant did not violate plaintiff's Eighth Amendment rights.  Even assuming she did, however, I find that the particular right in question was not clearly established at the time of the violation.  To meet the "clearly established" language of the second prong, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).  The Supreme Court has held that qualified immunity "protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*  Further, precedent dictates that "clearly established law" not be defined at a high level of generality; rather, it must be "particularized to the facts of the case." *Id.*  Thus, the appropriate question in this case is whether an official in defendant's position, faced with a directive from CDCR supervisors that elective procedures were to be postponed in the face of an unprecedented viral pandemic, should have known that following that directive was a violation of plaintiff's clearly established rights.  *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate

---

[1] At worst, the policy might, with the benefit of hindsight, have been overly conservative when weighed against the benefits of certain elective procedures.  Its implementation, however, cannot reasonably be called deliberately indifferent.

clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks omitted). The answer is assuredly no, and, thus, plaintiff is entitled to qualified immunity.

### iii. Plaintiff's Opposition and Sur-Reply

In his oppositional filings, plaintiff argues that other inmates were receiving injections during the period that the directive was in effect. ECF No. 37 at 1-2. He has attached declarations from other inmates attesting to this. *Id.* at 5-7. This argument is unconvincing for several reasons. First, there is no indication that defendant knew that defendant's approval was required for these injections. Second, if such approval was required, there is no indication that she sanctioned these injections but, for some unknown reason, denied plaintiff's. Were these injections, whatever their contents and purpose, also qualified as elective procedures? The declarations are silent as to these questions and, as such, do not create a salient dispute of material fact.

In his sur-reply, plaintiff attacks defendant's qualified immunity defense and argues that his right to constitutionally adequate medical care was clearly established. ECF No. 40 at 2. That is undoubtedly true, but qualified immunity, as noted above, does operate at such a high level of abstraction. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The question is, again, whether a reasonable official, faced with the particular facts of this case, would know that following the directive that elective procedures be postponed was a violation of plaintiff's constitutional rights. For the reasons stated above, I find that a reasonable official would not.

### Conclusion

Accordingly, it is ORDERED that plaintiff's motion for leave to file sur-reply, ECF No. 39, is GRANTED.

Further, it is RECOMMENDED that defendant's motion for summary judgment, ECF No. 29, be GRANTED and judgment be entered in her favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of

service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   September 3, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE